## MOORE et v BARRY et

Ohio Appeals, 7th Dist, Monroe Co
Decided April 29, 1931

Lynch & Sawyers and L. E. Matz, Woodsfield, for Moore et.

Moore, Devaul & Moore, Woodsfield, for Barry et.

POLLOCK, J.

The issues raised in this pleading is whether the rights of the defendants, under this oil and gas lease, should be forfeited on the ground that they are not producing oil, as required under said lease.

Their right to hold and occupy this land, for the purpose of producing oil, depends upon the conditions of the lease made by Patrick Hickey, and delivered to The Central Gas Company. This lease provided as follows:

"It is agreed that this lease shall remain in force for the term of 3 years from this date, and as long thereafter as oil or gas or either of them, is produced therefrom by the party of the second part, his heirs, executors, administrators, or assigns, or operations are continued thereon."

It will be noticed that it was to continue as long as oil or gas is produced from the premises, or operations are continued thereon. There is no question but what these parties are producing oil in large quantities, and operations are still going on on these premises. It follows that the conditions of this lease have not been violated as yet, and the defendants' right to produce oil on these premises under this lease cannot be forfeited, or the plaintiffs' title quieted against this lease.

We then come to the question under the second cause of action. Without referring specifically to the allegations under this second cause of action, the complaint is that the defendants have connected what

is known as No. 6 well with an air plant, which is located on what is known as the Stoehr farm, and is forcing air into this well, and forcing it from under the plaintiffs' property, and, as claimed, into other wells on adjoining lands, the wells on which are owned by the defendants, and thereby depriving plaintiffs of their just amount of oil, and they ask that they be enjoined from operating this air plant in No. 6 well, and, also, that judgment be entered against the defendants for the value of oil thus forced through into the wells on adjoining lands.

There is an answer filed to this which, in substance, admits the placing of this air plant, but that it is the ordinary and usual way of producing oil when the wells fail to flow.

A reply was filed to this answer and the case is now here on the testimony.

It appears that at the time that the defendants became the owners under this lease of the right to produce oil on this territory, which was about 1921 or 1922, there had been drilled on these premises five wells. There were but two producing wells, what is known as Nos. 4 and 5, Nos. 1, 2 and 3 having been abandoned.

After the defendants had owned this lease for some time, they drilled what is known as No. 6 which produced oil. After the production had declined in No. 6 to something like 5-100 of a barrel per day, they ceased producing oil from this well, and attached this air pressure plant to it, as already stated.

It is conceded that before using this air plant, the land owner's consent was not secured. The question then arises whether the defendants have a right to use this air plant as they are doing.

The rights of these parties in this regard are also determined by the lease, to which we have already referred. That lease gave the owner thereof the right to drill and produce oil or gas from these premises.

It is conceded that no oil is now being produced from No. 6, in fact, the air is intended to drive the oil away from No. 6. Where it goes or what direction it goes, as testified to by one of the defendants, no one can tell. Of course, the oil is driven in the direction of the least resistance. Whether that would be in the direction of the wells that are on these premises, or in the direction of other wells on adjoining premises, or simply forcing the oil off these premises, no one can tell; it cannot be told.

The defendants have no right to force oil off of these premises into other wells, or, in fact, force oil from under these premises to the premises of defendants, even if the oil is not produced in wells on other property.

The only rights that were conveyed under the lease that we have spoken of is to produce oil from these premises, and the law requires the lessee to protect reasonably the owner in his right to the oil.

There is an implied grant on the part of the lessee under such leases that he will drill and operate such number of wells as will be ordinarily required to reasonably produce the oil contained under such land. **Harris v The Ohio Oil Co., 57 Oh St, 118.**

There is also an implied agreement that the lessee will protect the lines of the lessor from producing oil wells on adjoining lands. We are not referring to these two authorities because there has been any failure on the part of the lessee to comply with these requirements, but to indicate or show the diligence which is required of the lessee to secure the oil under the lessor's land to the lessor, and, also, to make a reasonable effort to produce the oil under this property.

We then come to the question whether the lessee has a right to install a mechanical device which tends to drive the oil from under any part of defendants' premises.

In 1st Thornton on The Law of Oil and Gas at page 56, §31, we find the following:

"While every land owner has the right to bore for gas on his own land, and to use such portion of it as rises by natural laws to the surface in his wells, or flows into his pipes, yet an adjoining owner, at least, has no right to induce an unnatural flow into or through his well, or do any act with reference to the common reservoir and the gas in it, injurious to or calculated to destroy it; and an action may be maintained by the owners of the superincumbent lands to enjoin another owner from using devices for pumping, or any other artificial process, that shall have the effect of increasing the natural flow of the gas."

Further, on page 58 of this work:

"Natural gas in the ground is so far the subject of property rights in the owners of the superincumbent lands, that while each of them has the right to bore or mine for it on his own land, and to use such portion of it as when left to the natural laws of flowage may rise in the wells of such owner and into his pipes, no one of the owners of such lands has the right, without the consent of all the other owners to induce an unnatural flow into, or through his own wells, or to do any act with reference to the common reservoir, and body of gas

722

therein, injurious to, or calculated to destroy it."

* * * "The right of each owner to take the gas from the common reservoir is recognized by the law, but this right is rendered valueless if one well owner may so exercise his right as to destroy the reservoir, or to change its condition in such manner that the gas will no longer exist there."

A somewhat similar question was before the Supreme Court of Indiana in the case of the Manufacturers Gas & Oil Co. v Ind. Nat. Gas & Oil Co., 50 L. R. A., page 768.

In the opinion, on page 774, this court says:

"Independently, however, of any statute, for the reason already stated, the common owners of the gas in the common reservoir, separately or together, have the right to enjoin any and all acts of another owner which will materially injure, or which will involve the destruction of, the property in the common fund, or supply of gas."

We think these authorities sustain the proposition that the lessee cannot use any mechanical devices that will tend to drive the oil from under the lessor's land, and without any authority, it seems to be a reasonable proposition of law if the land owner is entitled to the oil while it is under his land, and he has a right to drill into this oil and to draw it to the surface. It then becomes his personal property but he has no right to use mechanical devices to draw the oil from under the adjoining lands, neither has the lessee a right, without the lessor's consent, to use mechanical devices which would force the oil from under the lessor's land.

It is in evidence by men experienced in the oil production, that the air pressure, as used by the lessee on this lease, is the best modern way of producing oil from weak wells, or wells where the production has declined.

That is all right so far as the production is concerned, but the lessees have no right in that way to force the oil from under lessor's land, and we feel that in such conditions, at least, as exist here where there is adjoining wells, and where the oil may be forced into these wells, or forced from under lessor's premises, that the lessee has no right to install such a device without the consent of the lessor.

A perpetual injunction is granted against the defendants operating the air plant on this property.

There is, also, asked a judgment for the amount which the plaintiffs have lost during the operation of this air plant.

We feel that the evidence as to the loss is so meager that we cannot determine with a reasonable degree of certainty the damages sustained by plaintiffs.

For that reason, that question is not determined. If plaintiffs desire, the case, for the determination of damages, will be certified to the Common Pleas Court where the matter can be determined by a jury.

Exceptions noted.

FARR and ROBERTS, JJ, concur.